**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| RUSSELL JAY NEWELL, | |
| Movant, | CIVIL ACTION NO.: 5:16-cv-32 |
| v. | CIVIL ACTION NO.: 5:18-cv-03 |
| UNITED STATES OF AMERICA, | (Crim. Case No.: 5:13-cr-9) |
| Respondent. | |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On March 7, 2014, this Court sentenced Russell Jay Newell ("Newell") to 188 months' imprisonment under the Armed Career Criminal Act ("ACCA") after he pleaded guilty to being a felon in possession of a firearm, as well as to one count of possession of methamphetamine with intent to distribute. Newell, who is currently incarcerated at the Federal Correctional Institution Marianna, Florida, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, on April 22, 2016. (Doc. 56.)[1] The United States moved to dismiss Newell's Motion. (Doc. 58) Newell has also filed a Motion to Amend his Section 2255 Motion, (doc. 62), a Second Section 2255 Motion, (doc. 63), and a Motion to Appoint Counsel, (doc. 64). The Clerk of Court treated these pleadings as a separate Section 2255 Motion and filed them in a separate civil case.

[1] The pertinent record documents in this case are filed on the docket of Newell's criminal case, United States v. Newell, 5:13-cr-9 (S.D. Ga. April 3, 2013), and many are not included in Newell's civil dockets. Furthermore, as explained below, Newell's Section 2255 pleadings are divided between two civil dockets. Thus, for ease of reference and consistency, the Court cites to Newell' criminal docket in this Order and Report and Recommendation.

Through his Motion to Amend and Second Section 2255 Motion, Newell seeks to add claims that are untimely, unavailing, and barred by unnecessary delay. Newell cannot supplement his original Motion to add these futile claims. In his original Section 2255 Motion, Newell contends that the Court must resentence him following the United States Supreme Court's decision in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (June 26, 2015). However, Johnson only invalidated the ACCA's residual clause, and Newell has failed to demonstrate that the Court relied upon that clause in any way during his sentencing proceedings. To the contrary, the record reveals that the Court properly sentenced Newell as an armed career criminal under other provisions of the ACCA due to his prior convictions for burglary and manufacturing methamphetamine.

For these reasons, which I detail more fully below, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, (doc. 58), and **DENY** Newell's Motion to Vacate, Set Aside, or Correct his Sentence, (doc. 56). Additionally, the Court **DENIES** Newell's Motion to Amend, (doc. 62), and the Court should **DISMISS** his Second Section 2255 Motion, (doc. 63). The Court also **DENIES** Newell's Motion for Appointment of Counsel. (Doc. 64.) Further, I **RECOMMEND** that the Court **DENY** Newell a Certificate of Appealability and *in forma pauperis* status on appeal. The Court should **DIRECT** the Clerk of Court to **CLOSE** these cases and enter the appropriate judgments of dismissal.[2]

[2] Newell is not entitled to an evidentiary hearing. Newell has the burden of establishing the need for an evidentiary hearing. Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984). He would be entitled to a hearing only if his allegations, if proved, would establish his right to collateral relief. Townsend v. Sain, 372 U.S. 293, 307 (1963). "Under Rules Governing Section 2255 Cases, Rule 4(b), a district court faced with a 2255 motion may make an order for its summary dismissal "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]" Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir. 2002). Accordingly, no hearing is required when the record establishes that a Section 2255 claim lacks merit. United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984). Additionally, the Court need not hold a hearing where the record reveals the claim is defaulted. McCleskey v. Zant, 499 U.S. 467, 494 (1991). Newell has not established

## BACKGROUND

### I. The Armed Career Criminal Act

The Court typically begins its discussion of a matter by detailing the factual and procedural background of the case before it. However, the facts and history of Newell's case will be better understood by first discussing the federal statutes under which Newell was prosecuted and recent cases pertinent to those laws.

Federal law prohibits certain persons, including convicted felons, from shipping, possessing, or receiving firearms in or affecting interstate commerce. 18 U.S.C. § 922(g)(1). Ordinarily, an individual who violates this prohibition faces a statutory maximum sentence of ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, a statutory provision known as the "Armed Career Criminal Act" or "ACCA" imposes a higher mandatory minimum term of imprisonment for certain offenders. Any person who violates Section 922(g) and has on three or more occasions been convicted for a "serious drug offense" or "violent felony" will receive a mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). The ACCA provides, in relevant part:

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

---

any basis for an evidentiary hearing because the record reveals that all of the issues he raises either lack merit or are procedurally defaulted, waived, or barred.

18 U.S.C. § 924(e)(2)(B).[3]

The first prong of this definition, set forth in subsection (i), has come to be known as the "elements clause," while the crimes listed at the beginning of the subsection (ii), "burglary, arson, or extortion, or involves use of explosives," have come to be known as the "enumerated crimes clause." United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012). Finally, the last portion of subsection (ii), "or otherwise involves conduct that presents a serious potential risk of physical injury to another," is commonly referred to as the "residual clause." Id.

In the landmark case of Johnson, 576 U.S. at ___, 135 S. Ct. at 2563, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process[.]" Thus, the Court struck down that portion of the ACCA. However, the Court also emphasized that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. In Welch v. United States, 578 U.S. ___, 136 S. Ct. 1257, 1264–65 (Apr. 18, 2016), the Supreme Court held that Johnson announced a new substantive rule that applies retroactively to cases on collateral review.

While the four enumerated crimes (or the "enumerated crimes clause") have not suffered the same fate as the residual clause, they have been the subject of numerous recent decisions of the Supreme Court and the Eleventh Circuit Court of Appeals. These decisions inform an analysis that is more complicated than would appear at first blush: whether an offender's prior conviction that bears the label of an enumerated crime actually constitutes a conviction for one of the enumerated offenses for purposes of the ACCA. Rather than merely relying on the label attached to an offender's prior conviction, federal courts must assess whether the defendant

[3] "Serious drug offense" means "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii).

committed one of the enumerated crimes actually envisioned upon the passage of the ACCA. To conduct this inquiry, a sentencing court must assess the elements forming the basis of the offender's conviction and compare those elements to the "generic crime–*i.e.*, the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013).

Decisions regarding whether a burglary conviction qualifies as an ACCA predicate offense demonstrate how courts approach the enumerated crimes. Though the ACCA specifically lists "burglary" as a violent felony, merely because a state conviction is labeled a "burglary" does not automatically qualify it as a predicate offense under the ACCA. Rather, "[a]s the [ACCA] has been interpreted, a conviction for 'generic burglary' counts as a violent felony, while a conviction for 'non-generic burglary' does not." United States v. Ranier, 616 F.3d 1212, 1213 (11th Cir. 2010), *abrogated on other grounds by* United States v. Howard, 742 F.3d 1334 (11th Cir. 2014). A "generic" burglary is "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). A "non-generic" burglary is one that "do[es] not include all of the elements essential to generic burglaries," including burglaries of boats, automobiles, and other non-buildings. Ranier, 616 F.3d at 1214.

As with all enumerated crimes, to assess whether a state conviction for burglary qualifies as a generic crime, the Court can employ two methods. First, the Court must assess the state statute under "the categorical approach." Howard, 742 F.3d at 1345–46. If that assessment does not end the inquiry, then the Court must determine whether the statute can be assessed under the "modified categorical approach." Id. Under the "categorical approach," courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the

'generic' crime–*i.e.*, the offense as commonly understood." Descamps, 570 U.S. at 257. Under this approach, "[t]he prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." Id. If the statute so qualifies, then this ends the inquiry: the conviction is a violent felony, and the modified categorical approach is not needed. Howard, 742 F.3d at 1345.

However, if the burglary statute is broader than the elements of the generic crime, the statute itself does not qualify as a predicate offense under the categorical approach. Thus, the court must then determine whether it can apply the "modified categorical approach" to assess whether the defendant's conviction under the statute does qualify as a predicate offense. Id. Courts can use the modified categorical approach in those instances "when a prior conviction is for violating a so-called divisible statute." Descamps, 570 U.S. at 257. A divisible statute is a statute which "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to . . . determine which alternative formed the basis of the defendant's prior conviction." Id.

To determine which alternative of a divisible statute formed the basis for the prior conviction, a court can assess a limited class of documents including the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge. Shephard v. United States, 544 U.S. 13, 16 (2005). These documents are commonly referred to as "Shephard documents." If a statute is divisible, the Court can use the Shephard documents to "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic

crime." Descamps, 570 U.S. at 257. If the Shephard documents show that the defendant was found guilty under elements of a divisible statute which match elements of the generic offense instead of those which do not, the prior conviction is an ACCA predicate. Howard, 742 F.3d at 1347. In contrast, "a statute is indivisible if it contains 'a single, indivisible set of elements.'" Id. at 1346 (quoting Descamps, 570 U.S. at 258 (defining an indivisible statute as one "not containing alternative element")). "If a statute is indivisible, a court may not apply the modified categorical approach, and that is the end of the inquiry; the prior conviction cannot qualify as an ACCA predicate regardless of what any Shephard documents may show." Id.

In Howard, the Eleventh Circuit assessed whether the defendant's conviction under Alabama's third-degree burglary statute qualified as a generic burglary, and thus, a predicate violent felony under the ACCA. The Eleventh Circuit noted "[t]he elements of generic burglary under the ACCA are: (1) 'an unlawful or unprivileged entry into, or remaining in,' (2) 'a building or other structure,' (3) 'with intent to commit a crime.'" Id. at 1348 (quoting Taylor, 495 U.S. at 598). The Eleventh Circuit first determined that the Alabama statute the defendant in Howard was convicted under did not qualify as a generic burglary under the categorical approach because the elements of the offense were not the same as, or narrower than, those of the generic offense. Id. (citing Ranier, 616 F.3d at 1215). The Howard court then assessed whether the statute was divisible, and therefore, was able to be assessed under the modified categorical approach. The Court noted that, under Descamps, the "key to determining divisibility . . . is whether the 'statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." Id. (emphasis in original) (citation and internal quotation marks omitted). The Alabama statute contains nothing "suggest[ing] its definition of 'building' is drafted in the alternative." Id. "The items that follow

each use of the word 'includes' in the statute are non-exhaustive examples of items that qualify as a 'structure' and thus count as a 'building' under . . . § 13A-7-l(2). . . . The statutory definition of 'building' does not say what is not included. In light of the Descamps decision, illustrative examples are not alternative elements." Id. (citation omitted). Thus, the Eleventh Circuit determined that Alabama's third-degree burglary statute, § 13A-7-7, is a non-generic and indivisible statute, and a conviction under that statute "cannot qualify as a generic burglary under the ACCA." Id. at 1349.

In Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243 (June 23, 2016), the Supreme Court further clarified how courts should employ the modified categorical approach. The Court held the fact that a statute contains multiple alternative means of committing the crime does not make the statute divisible, if these means are not alternative elements but rather only factual determinations about an element, and thus, unnecessary to the jury's determination of guilt for the crime. 579 U.S. at ___, 136 S. Ct. at 2251–54. Put another way, the Court held that, when using the modified categorical approach to determine whether a prior conviction is a "violent felony" or "serious drug offense" under the ACCA, a court should focus on the "elements" of the statutory offense rather than on that offense's non-essential "means" of commission. Id.

After Mathis, the Eleventh Circuit analyzed whether a conviction under Georgia's former burglary statute can constitute a predicate violent felony under the ACCA. United States v. Gundy, 842 F.3d 1156, 1166–69 (11th Cir. 2016). In Gundy, the offender had been designated as an armed career criminal due to his prior burglary convictions under the same Georgia burglary statute underlying Newell's Georgia burglary convictions, O.C.G.A. § 16-7-1(a) (2011). Id. Applying Mathis, the Eleventh Circuit determined that, though the statute was "non-generic,"—i.e., broader than generic burglary, it was divisible. Id. The Court reasoned "the

plain text of the Georgia statute has three subsets of different locational elements, stated in the alternative and in the disjunctive . . . effectively creating several different crimes." Id. at 1167. "That the Georgia prosecutor must select and identify the locational element of the place burgled—whether the place burgled was a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute." Id. Therefore, courts may continue to apply the modified categorical approach to determine whether a defendant's convictions under Georgia's prior burglary statute match the generic definition of burglary, and thus, qualify as predicate offenses under the ACCA. Id. at 1168–69.

**II. Newell's Conviction and Sentencing**

On April 2, 2013, a grand jury in this District charged Newell with three crimes: possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count One); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Count Two); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). (Doc. 1.)

Newell and his attorney, Mr. Marc G. Metts, were able to negotiate a plea agreement with the Government whereby Newell agreed to plead guilty to Count One (possession of a firearm by a convicted felon) and Count 2 (possession with intent to distribute methamphetamine) in exchange for the Government moving to dismiss Count Three. (Doc. 38.) On July 8, 2013, Newell pleaded guilty to Counts One and Two. (Doc. 27.) However, at the time of his first change of plea, or Rule 11, proceeding, Newell was advised that his maximum term of imprisonment as to Count One was ten years. (Doc. 38.) The United States Probation Office subsequently learned that Newell had three qualifying predicate convictions under the ACCA that increased Newell's sentencing exposure to a mandatory minimum of fifteen years and a

maximum of life imprisonment. Because Newell was not advised of this mandatory minimum at his initial plea hearing, the Government moved for a supplemental plea hearing. (Doc. 32.) On January 6, 2014, the Court held a supplemental change of plea hearing. The Court apprised Newell, among other things, of the fifteen-year mandatory minimum he faced under the ACCA, and Newell again pleaded guilty to Counts One and Two. (Docs. 34, 35.)

Prior to Newell's sentencing hearing, United States Probation Officer Scot Riggs prepared a Presentence Investigation Report ("PSI"). Probation Officer Riggs detailed Newell's offense conduct and criminal history and calculated Newell's statutory penalties, as well as his advisory Guidelines' sentencing range. The Probation Officer described Newell's extensive list of criminal convictions. (PSI, ¶¶ 34–45.) Pertinently, Probation Officer Riggs detailed an April 14, 1997 conviction for burglary, (id. at ¶ 38); an April 13, 1998 conviction for burglary, (id. at ¶ 39); and a November 30, 2009 conviction for manufacturing methamphetamine, (id. at ¶ 42). When calculating Newell's offense level, Probation Officer Riggs asserted, "the defendant has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions (see paragraphs 38, 39, and 42). Therefore, the defendant is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." (Id. at ¶ 29.) Officer Riggs concluded that Newell's statutory minimum term of imprisonment as to Count One was fifteen years and the maximum term was life. (Id. at ¶ 71.) According to the PSI, Newell's Guidelines' range for imprisonment was 188 to 235 months. (Id. at ¶ 72.)

Newell's counsel, Mr. Metts, filed objections to the PSI. (PSI Addendum.) Mr. Metts argued that Newell's April 1997 convictions for theft by receiving stolen property and for burglary were unlawfully obtained. (Id. at p. 3.) Mr. Metts contended that Newell was a

juvenile at the time of the convictions and that the appropriate pleadings for transferring Newell's cases to Superior Court from Juvenile Court were not filed. (Id.) Mr. Metts also objected to Newell's designation as an armed career criminal under the ACCA and his designation as a career offender under the Sentencing Guidelines. (Id. at pp. 1–2.)

The Probation Officer recommended that the Court overrule Mr. Metts' objections. As to whether Newell's prior convictions were unlawfully obtained, Officer Riggs stated that Newell could not collaterally attack his state convictions in a federal sentencing proceeding. (Id. at p. 3.) As to Mr. Mett's career offender objection, the Probation Officer stated in pertinent part:

> Each of paragraphs 38 and 39 set forth a separate conviction for the offense of burglary, which is one of the enumerated offenses in 18 U.S.C. § 924(e)(2)(B) that qualify as a "violent felony." Further, each of these two burglary convictions meets the elements of generic burglary—unlawful, or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. See Taylor v. United States, 495 U.S. 575, 598–99 (1990). As such, the convictions in paragraphs 38 and 39 qualify as predicate convictions for ACCA purposes.

(Id. at p. 2.)

Newell appeared before the Honorable William T. Moore for a sentencing hearing on March 6, 2014. (Doc. 47.) At that hearing, Judge Moore heard from Newell, Newell's counsel, and counsel for the Government regarding Newell's potential sentence. (Id.) This colloquy began by Mr. Metts offering argument in support of his objections. (Id. at pp. 3–6.) Judge Moore overruled the objections and adopted the PSI's findings of fact and conclusions. (Id. at p. 6.) Judge Moore determined, in agreement with the PSI, that the Guidelines called for a sentence between 188 to 235 months in prison. (Id.) Mr. Metts asked for a sentence at the low end of the Guideline range, and AUSA Tania Groover concurred with Probation Officer Riggs' recommendation that a sentence of 188 months' was appropriate. (Id. at p. 7.) Newell then made a statement of allocution where he apologized for his crimes and asked Judge Moore to

take the difficulties Newell had experienced in his life into consideration when sentencing him.

(Id. at pp. 7–8.)

Judge Moore then pronounced a sentence of 188 months as to Counts One and Two to be served concurrently. (Id. at pp. 8–9.) Judge Moore found no reason to depart downward from the advisory Guidelines' range. In his articulation of how he arrived at his sentence, Judge Moore stated,

> On November 29, 2012, the Defendant fled from a traffic stop driving at a high rate of speed, and after abandoning his vehicle the Defendant fled on foot carrying with him an unloaded .40 caliber handgun and a quantity of methamphetamine. The Defendant was ultimately apprehended and the drugs and the firearm were recovered. The Defendant has acknowledged his criminal conduct in this case and he has entered his plea of guilty in a timely manner. Mr. Newell unfortunately has a lengthy substance-abuse history and an extensive criminal history including convictions of seven felony offenses, and based upon his criminal history and the nature of the instant offense the Defendant is classified for sentencing purposes as both a career offender and an armed career criminal. Nonetheless, the Court has determined that a sentence at the lower end of the advisory guideline range is sufficient to address the sentencing factors set forth in 18 United States Code Section 3553(a), specifically, the need for the sentence imposed to reflect the seriousness of the offense conduct and to afford adequate deterrence of future criminal conduct.

(Id. at pp. 9–10.)

On March 14, 2014, Mr. Metts filed a Notice of Appeal to the Eleventh Circuit Court of Appeals on Newell's behalf. (Doc. 41.) The Eleventh Circuit rejected Newell's argument that Judge Moore's sentence was not reasonable and affirmed that sentence on September 30, 2014. (Doc. 51.)

## III. Newell's Section 2255 Motion and Subsequent Pleadings

Newell filed the instant Section 2255 Motion on April 22, 2016. (Doc. 56.) Newell argued that under Johnson, his sentence violates his right to due process of law. (Id. at p. 4.) Specifically, he contended that after Johnson struck down the residual clause, his 1997 and 1998

convictions for burglary no longer qualify as ACCA predicate offenses. (Id.) The Government responded in opposition to Newell's Motion and argued that the Court designated his burglary convictions as violent felonies under the ACCA's enumerated crimes clause and not the residual clause. (Doc. 58.) Newell subsequently sought leave to amend his Section 2255 Motion, (doc. 62), and filed a Second Section 2255 Motion, (doc. 63). In those pleadings, Newell argued that Metts rendered ineffective assistance of counsel by failing to object to the Court "using unconstitutionally obtained predicate offenses" to support his ACCA designation. (Doc. 62, pp. 5–8.) The Government filed a Response in opposition to Newell's Motion to Amend contending that his new claims were untimely and meritless. (Doc. 67.) Newell filed a Reply to the Government's Response. (Doc. 68.)

## DISCUSSION

### I.    Newell's Motion to Amend (Doc. 62)

Federal Rule of Civil Procedure 15, which governs amendment of pleadings, is applicable to 28 U.S.C. § 2255 petitions. Mayle v. Felix, 545 U.S. 644, 655 (2005). Under Rule 15(a), a party may amend his complaint once as a matter of right within twenty-one (21) days after a motion is served under Rule 12(b), (e), or (f). Once this time has passed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" In re Engle Cases, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). However, a court need not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated

failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." In re Engle Cases, 767 F.3d at 1108–09 (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Through his Motion to Amend, Newell seeks to add claims to his Section 2255 Motion that have no basis in Johnson. (Doc. 62.) In his Motion to Amend, Newell argues that Mr. Metts rendered ineffective assistance of counsel regarding the use of his prior convictions. (Id. at pp. 5–7.) He argues that Mr. Metts failed to investigate one of his burglary convictions and his convictions for theft by receiving stolen property and theft by taking. (Id.) He contends if Mr. Metts had investigated the circumstances surrounding these convictions, he would have discovered that the convictions were obtained "unconstitutionally." (Id.) Specifically, Newell takes issue with the fact that the Georgia state courts treated him as an adult in regard to these convictions despite the fact that he was under the age of 18 and the state courts did not properly transfer his cases from Juvenile Court to Superior Court. (Id.)

The Government correctly argues in its opposition to Plaintiff's Motion to Amend that these claims cannot "relate back" to Newell's Section 2255 Motion. (Doc. 67.) Further, even if these claims could somehow relate back, Newell did not file his Section Motion until more than one year after his conviction became final. Consequently, these claims are time-barred and, thus, futile. Moreover, the claims are unavailing, and Newell fails to provide any good cause for his undue delay in asserting them.

Section 2255 Motions to Vacate or Set Aside are subject to a one-year statute of limitations period. 28 U.S.C. § 2255(f). This limitations period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Newell was sentenced on March 7, 2014, and the Court entered final judgment on that same date. (Doc. 39.) Newell filed a Notice of Appeal, and the Eleventh Circuit affirmed his conviction and sentence on September 30, 2014. (Doc. 52.) Newell had ninety days from the Eleventh Circuit's judgment to seek a writ of certiorari to the United States Supreme Court. Sup. Ct. Rule 13 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice."). On the date that ninety-day period expired, December 29, 2014, Newell's judgment of conviction became final. See Clay v. United States, 537 U.S. 522, 525, 527 (2003) (Under 2255(f)(1) "a judgment of conviction becomes final when the [90-day] time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Thus, Section 2255(f)(1)'s statute of limitations expired on December 29, 2015. Newell did not execute his Section 2255 Motion until March 22, 2016, which was months after the expiration of the applicable statute of limitations period. Consequently, absent some exception, Newell's claims are untimely under Section 2255(f)(1).

Newell does not argue that he is entitled to equitable tolling or to the statute of limitations periods set forth in Sections 2255(f)(2) or (4). Rather, he argues that he timely filed his Motion

under Section 2255(f)(3) because Johnson was not decided until April 22, 2016. (Doc. 56, p. 12.) Indeed, in Welch v. United States, 587 U.S. ___, 136 S. Ct. 1257 (Apr. 18, 2016), the Supreme Court held that Johnson is a substantive decision which applies retroactively to cases on collateral review. Newell executed this Motion within one year of the Supreme Court's decision in Johnson. Thus, Section 2255(f)(3) allows Newell to assert his Johnson-based claim at this time.[4]

However, though Newell's Johnson claim is timely, he cannot use that claim to open the door to other non-Johnson claims. Zack v. Tucker, 704 F.3d 917, 922–26 (11th Cir. 2013) (habeas limitations periods apply on a claim-by-claim basis). In Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017), a Section 2255 movant challenged his ACCA sentence partly based on Johnson and partly on other grounds. The Eleventh Circuit found that, though the movant's Johnson claims were timely under Section 2255(f)(3), his claims based on principles and precedent other than Johnson were not. Beeman, 871 F.3d at 1220. Thus, the Court affirmed the dismissal of those claims. Id.

Likewise, through his Motion to Amend, Newell attempts to assert ineffective assistance of counsel claims that do not rely upon Johnson or any right recently recognized by the Supreme Court. He does not identify any impediment that prevented him from bringing his ineffective assistance of counsel claims within a year of his conviction becoming final. He also does not raise a piece of newly discovered evidence. Thus, even if Newell had asserted his ineffective assistance of counsel claims in his original Section 2255 Motion, those claims would be untimely by approximately three months.

Indeed, Newell's ineffective assistance of counsel claims are even more untimely than that. Newell did not file his Motion to Amend until October 16, 2018, more than two years after

[4] Nonetheless, as discussed below, Newell's Johnson-based claims lack merit

his conviction became final. (Doc. 62.) These additional claims do not relate back to his original Section 2255 Motion. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In order to relate back, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings. Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000). "The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). "[W]hile Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." Dean v. United States, 278 F.3d 1218, 1221 (11th Cir. 2002).

Newell's proposed claims of ineffective assistance of counsel claims do not arise out of the same conduct, transaction, or occurrence as his Johnson claim. His Johnson claim centers on the definition of "violent felony" under the ACCA. In contrast, his ineffective assistance of counsel claims center on whether Mr. Metts properly investigated and contested the circumstances underlying his prior convictions. The Government was not noticed of these new claims through Newell's original Section 2255 Motion. In the Section 2255 context, even when faced with claims that have more connection than Newell's, the Eleventh Circuit has repeatedly found that new claims do not relate back to the original motion. See, e.g., Farris v. United

States, 333 F.3d 1211, 1215 (11th Cir. 2003) (new claims that a prior conviction was constitutionally invalid and the quantity of drugs was improperly decided did not relate back to original claims concerning interpretation of the sentencing guidelines and that counsel was ineffective for failing to advise defendant of his sentencing exposure as a career offender); Pruitt v. United States, 274 F.3d 1315, 1316–19 (11th Cir. 2001) (new claims of ineffective assistance of counsel, abuse of discretion by the district court, and prosecutorial misconduct did not relate back to original claims that the sentence violated the ex post facto clause); Davenport, 217 F.3d at 1346 (new claims that counsel was ineffective for allowing defendant to be sentenced on drugs that were not part of same course of conduct, for relying on summary lab report, and for failing to advise that a plea agreement might be possible did not relate back to original claims that counsel was ineffective for failing to raise arguments regarding drug composition and weight or claims that government witness committed perjury).

Further, the record reflects that Mr. Metts did investigate the circumstances surrounding Newell's prior convictions and argued that this Court should not use those convictions at sentencing. In his Objections to the PSI, Mr. Metts argued that the Court should not use Newell's conviction for theft by receiving stolen property or his 1997 conviction for burglary to designate him an armed career criminal under the ACCA or to calculate his Guidelines range. (PSI Addendum, p. 3.) Mr. Metts argued that Newell was not "legally convicted as an adult" for those offenses. (Id.) However, Probation Officer Riggs opposed this objection contending that "with the sole exception of convictions obtained in violation of the right to counsel, a defendant in a federal sentencing proceeding has no right to collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA." (Id. (citing Custis v. United States, 511 U.S. 485 (1994).) At the sentencing hearing, Mr. Metts reiterated his objection and

stated that he had combed through "a very large clerk's file" regarding the state conviction and did not find a motion to transfer the case to the Superior Court from the Juvenile Court. (Doc. 47, pp. 4–6.) Ultimately, Judge Moore overruled the objection agreeing with the United States Probation Officer that Newell could not collaterally attack his state court conviction through the federal sentencing proceeding. (Id.)

Thus, even if Newell's claims were not untimely, Mr. Metts took the very action that Newell claims he should have taken and made the very arguments that Newell claims he should have made. As such, Newell cannot show (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, or (2) that he suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 685–686 (1984). Consequently, his claims would be futile on the merits.

For all of these reasons, the claims that Newell proposes to add through his Motion to Amend are untimely and unavailing. Therefore, it would be futile for Newell to supplement his Section 2255 Motion with these claims. Moreover, Newell has failed to explain why he waited more than twenty months after he filed his original Section 2255 Motion to seek leave to amend that Motion.

Accordingly, the Court **DENIES** Newell's Motion to Amend his Section 2255 Motion, (doc 62).

## II. Newell's Second Section 2255 Motion (Doc. 63)

On January 16, 2018, at the same time that Newell filed his Motion to Amend, Newell filed a Second Motion to Vacate pursuant to 28 U.S.C. § 2255. (Doc. 63.) Just as in his Motion to Amend, in this second Section 2255 Motion, Newell argued that Mr. Metts failed to object to the use of his burglary and theft by taking convictions. (Id. at p. 4; Doc. 65, pp. 4–5.) Because

Newell labeled his pleading as a Motion to Vacate, the Clerk of Court docketed this Motion as a Second 2255 Motion, and opened a new civil matter, Newell v. United States, Case No. 5:18-cv-3 (S.D. Ga. Jan. 16, 2018). However, because Newell's original Section 2255 Motion was still pending, the Court must treat this subsequent motion as a motion to amend and not a successive Section 2255 Motion. United States v. Williams, 185 F. App'x 917, 919 (11th Cir. 2006) ("As their § 2255 motion was still pending, [movant's] subsequent motion should not have been considered a successive § 2255 motion, but instead a motion to amend their § 2255 motion.") (citing Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002)).

Newell raises the same arguments in his Section 2255 Motion as his Motion to Amend, and I will not belabor the points explained above. For the reasons previously stated, the claims that Newell seeks to add are untimely, unavailing, futile, and brought after undue delay. Consequently, the Court should deny Newell's effort to amend his first Section 2255 Motion with the claims asserted in his second Motion, and the Court should **DISMISS** Newell's second Section 2255 Motion, (doc. 63).

### III. Newell's Motion to Appoint Counsel (Doc. 64)

Newell also requests that the Court appoint counsel to represent him on his Section 2255 Motion. (Doc. 64.) There is no automatic constitutional right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985); see also Barbour, 471 F.3d at 1227–32 (even defendants sentenced to death do not enjoy a constitutional right to post-conviction counsel). Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under 28 U.S.C. § 2255, but such requests are discretionary when "due process or

the ‘interests of justice’” so require. Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979); see also 28 U.S.C. § 2255(g) and Rule 8(c) of the Rules Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel pursuant to 18 U.S.C. § 3006A). Moreover, appointment of counsel is “a privilege that is justified only by exceptional circumstances[.]” McCall v. Cook, 495 F. App’x 29, 31 (11th Cir. 2012).

The Court does not find any exceptional circumstances justifying the appointment of counsel in this case. An evidentiary hearing is not required in this case, and the interests of due process and justice do not otherwise require counsel. Newell does not lay out any such circumstances in his Section 2255 Motion, his Motion to Appoint Counsel, or his other pleadings. Therefore, the Court **DENIES** Newell’s request for appointment of counsel.

## IV. Newell’s Section 2255 Motion (Doc. 56)

In his first Section 2255 Motion, Newell contends that Judge Moore relied upon the ACCA’s residual clause when finding his burglary convictions to be “violent felonies.” (Doc. 56, p. 4.) As explained above, the Supreme Court struck down the residual clause in Johnson. However, to prove a Johnson claim, Newell must show:

> (1) [] the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by Johnson) to qualify a prior conviction as a violent felony, and (2) [] there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

Beeman, 871 F.3d at 1221–22. Newell cannot meet either of these two requirements.

### A. Whether the Court Relied upon the Residual Clause at Newell’s Sentencing

In the PSI, Probation Officer Riggs stated that Newell “has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different

occasions (see paragraphs 38, 39, and 42). Therefore, the defendant is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." (PSI at ¶ 29.) In turn, Paragraphs 38, 39, and 42 of the PSI detailed the following three convictions: (1) Newell's April 14, 1997 conviction for burglary in the Superior of Ben Hill County Georgia; (2) his April 13, 1998 conviction for burglary in the Superior Court of Ben Hill County, Georgia; and (3) his November 30, 2009 conviction for manufacturing methamphetamine in the Superior Court of Coffee County, Georgia. (PSI at ¶¶ 38, 39, 42.) After Mr. Metts objected to Newell's ACCA classification, Officer Riggs responded that the separate convictions described in Paragraphs 38 and 39 were for burglary, "which is one of the **enumerated offenses** in 18 U.S.C. § 924(e)(2)(B) that qualify as a 'violent felony.'" (PSI Addendum, p. 2 (emphasis added).)

Thus, it is abundantly clear that Officer Riggs relied upon the ACCA's enumerated crimes provision and not the residual clause when concluding that Newell was an armed career criminal. Moreover, Riggs went on to explain that both of Newell's burglary convictions met the definition of "generic burglary." (Id.) By relying upon the Shepard documents to explain that Newell's conviction met the definition of generic burglary (unlawful entry into a structure, with the intent to commit a crime therein), the Probation Officer clearly conducted an enumerated crimes analysis and not a residual clause analysis. Judge Moore adopted Probation Officer Riggs' findings of facts and conclusion at the sentencing hearing. (Doc. 47, p. 6.)

At no point in the PSI or during the sentencing hearing did Judge Moore, Newell's counsel, counsel for the Government, or Probation Officer Riggs discuss the residual clause, quote the residual clause, paraphrase the residual clause, or even indirectly refer to the residual clause. The sentencing court did not address, much less decide, whether any of Newell's

convictions "otherwise involve conduct that present a serious potential risk of physical injury to another." The residual clause played no part in Newell's sentencing proceedings whatsoever.

The record unequivocally establishes that the Court relied upon the ACCA's enumerated crimes clause and its enumeration of "burglary" as a crime of violence when sentencing Newell. See Oxner v. United States, No. 16-17036, 2017 WL 6603584, at *2–3 (11th Cir. Dec. 27, 2017) (affirming district court's finding, based on circumstantial evidence, that the sentencing court relied on the enumerated crimes provision to enhance defendant's sentence). The Supreme Court in Johnson emphasized its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." 576 U.S. at ___, 135 S. Ct. at 2563. Because the record establishes that the residual clause played no part in Newell's sentencing proceedings, Johnson affords him no relief.

Moreover, even if the record were unclear as to whether Judge Moore relied on the residual clause or the enumerated crimes clause, the Court still must deny Newell's Motion. Uncertainty is not enough to obtain Johnson relief. Rather, Newell possesses the burden to establish that Judge Moore "more likely than not" relied on the residual clause. Beeman, 871 F.3d at 1221–22. Thus, even if the record were silent on that issue, "where the evidence does not clearly explain what happened, the party with the burden loses." Id. at 1225; see also Oxner, 2017 WL 6603584, at *3 (affirming denial of Johnson relief to Section 2255 movant who conceded that record was silent as to whether he was sentenced under residual clause or enumerated crimes clause). Newell has not carried his burden to prove that Judge Moore relied on the residual clause—solely or otherwise—when sentencing him under the ACCA.

Further, even if Newell had proven that Judge Moore solely relied upon the residual clause, he has failed to prove that he does not have at least three convictions for "violent

felonies" or "serious drug offenses" under the other clauses of the ACCA. As explained below, prior to his sentencing, Newell had obtained two convictions that qualify as "burglary" under the ACCA's enumerated crimes clause and one conviction for a "serious drug offense[]."

**B. Whether Newell has Three Predicate Offenses Absent the Residual Clause**

Newell argues in his Response to the Motion to Dismiss that his Georgia burglary convictions do not qualify as "burglaries" as enumerated in the ACCA. (Doc. 60.) However, Newell did not raise this argument in his original Section 2255 Motion. Furthermore, even if Newell had raised these arguments in his Motion, these claims would be untimely. As explained above, Newell did not file his Section 2255 Motion until more than a year after his conviction became final. While Section 2255(f)(3) allows Newell to bring his Johnson claims at the time he filed his motion, he cannot use Johnson to open the door to these untimely non-Johnson claims. Beeman, 871 F.3d at 1220; Zack v. Tucker, 704 F.3d at 922–26. The fact that Judge Moore did not rely upon the residual clause is fatal to Newell's Johson claims, and the Court need not conduct any further analysis of his Section 2255 Motion.

However, in the interest of completeness, the Court explains that Newell had three prior convictions that qualify as violent felonies or serious drug offenses under the ACCA. Newell does not contest the fact that his November 30, 2009, conviction for manufacturing methamphetamine qualifies as "serious drug offense." Nor could he plausibly do so. Under the ACCA, "serious drug offense" means "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). At the relevant time, Georgia law provided that "it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute

any controlled substance." O.C.G.A. § 16-13-30(b) (2009). The punishment for "any person who violates [that subsection] with respect to a controlled substance in Schedule I or Schedule II" was, for a first offense, "not less than five years nor more than 30 years." O.C.G.A. § 16-13-30(d) (2009); see also O.C.G.A § 16-13-26 (list of Schedule II controlled substances). Thus, Newell's manufacturing drug conviction gives him one strike towards his ACCA designation.

Additionally, as laid out above, Newell was convicted of burglary in the Superior Court of Ben Hill County, Georgia in April of 1997 and April of 1998. (PSI at ¶¶ 38, 39.) At the time of Newell's burglary convictions, Georgia's burglary statute provided that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another." O.C.G.A. § 16-7-1 (1998). In his Response to the Motion to Dismiss, Newell essentially argues that his conviction under this statute cannot qualify as a violent felony under the enumerated clause. (Doc. 60 (citing Mathis, 579 U.S. ___, 136 S. Ct. 2243)).

Fatal to Newell's argument is the Eleventh Circuit's decision in Gundy, which post-dates Newell's Response. As laid out above, in Gundy, the Eleventh Circuit squarely rejected the argument that Newell makes here. 842 F.3d at 1166–69. The Court found that, though O.C.G.A. § 16-7-1(a) was "non-generic,"–i.e., broader than generic burglary, it was divisible. Id. Therefore, even after Mathis, courts may continue to apply the modified categorical approach to determine whether a defendant's conviction under O.C.G.A. § 16-7-1(a) matches the generic definition of burglary, and thus, qualifies as a predicate offense under the ACCA. Id. at 1168–69. Probation Officer Riggs did just that in this case, and Judge Moore adopted his conclusions.

Further, Newell has not even attempted to show that Officer Riggs' modified categorical analysis contained any error. Nor could Newell do so. Because O.C.G.A. § 16-7-1(a) is divisible, the Court "must determine which of the alternative elements in Georgia's burglary statute formed the basis of [Newell's] prior burglary convictions and whether those elements match the generic definition of burglary." Id. at 1168. To make this determination, the Court looks at the Shepard documents, including the charging documents, to determine of what crime, with what elements, Newell was convicted. Id. As to his April 1997 burglary conviction, the State charged that Newell unlawfully entered the residence of Jerrold Wierth with the intent to commit a theft. (PSI at ¶ 38.) Newell pleaded guilty to this charge and received a ten-year probated sentence. (Id.) As to his April 1998 burglary conviction, the State charged that Newell unlawfully entered the home of June Martin with intent to commit a theft. (Id. at ¶ 39.) The court sentenced Newell to five years' imprisonment after he pleaded guilty to that crime. (Id.) Thus, using the Shepard documents concerning Newell's Georgia burglary convictions, Officer Riggs ensured that the convictions involved: (1) an unlawful entry; (2) into a dwelling house or building; (3) with intent to commit a crime therein. "These elements substantially conform to the generic definition of burglary." Gundy, 842 F.3d at 1169 (citing Howard, 742 F.3d at 1342).

Therefore, Newell's convictions qualified as a "burglary" under the ACCA's enumerated crimes clause. As such, the Court properly counted these two convictions as "violent felonies" when sentencing Newell. When combined with Newell's conviction for a "serious drug offense," Newell has three strikes, completing his ACCA designation.

For all of these reasons, Newell is not entitled to relief under Johnson, and the Court should **DENY** his Section 2255 Motion, (doc. 56).

## III. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Newell leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Newell has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Newell, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of

the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Newell's pleadings and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Newell a Certificate of Appealability, Newell is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Newell *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, (doc. 58), and **DENY** Newell's Motion to Vacate, Set Aside, or Correct his Sentence, (doc. 56). Additionally, the Court **DENIES** Newell's Motion to Amend, (doc. 62),

and the Court should **DISMISS** his second Section 2255 Motion, (doc. 63). The Court also **DENIES** Newell's Motion for Appointment of Counsel. (Doc. 64.) Further, I **RECOMMEND** that the Court **DENY** Newell a Certificate of Appealability and *in forma pauperis* status on appeal. The Court should **DIRECT** the Clerk of Court to **CLOSE** these cases and enter the appropriate judgments of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Newell and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 2nd day of March, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA